**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **HAN MA EUM, INC., d/b/a COASTAL HOME HEALTH CARE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:18-cv-2946** |
| | § | |
| **ALEX M. AZAR II, Secretary, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,** | § | |
| | § | |
| **Defendant.** | § | |

**COMPLAINT FOR EMERGENCY MANDAMUS RELIEF, ALTERNATIVELY, INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND ATTORNEYS FEES**

COMES NOW, Han Ma Eum, Inc. d/b/a Coastal Home Health Care (the "Plaintiff") and files this its Complaint for Emergency Mandamus Relief, Injunctive Relief, Declaratory Judgment and Attorneys Fees against Alex M. Azar II, Secretary of the United States Department of Health and Human Services (the "Defendant"), and alleges and avers as follows:

**INTRODUCTION**

1. Utilizing statistical sampling, Defendant determined a $909,176.00 extrapolated Medicare overpayment. The actual overpayment of the claims that comprised the sample was $57,529.98. Over the past two years, Plaintiff, a home health agency participating in the Medicare program, has endured a torturous administrative process – one that is supposed to take no more than a year – that not only has failed to adjudicate the appeal of the alleged overpayment, but deprived the provider of statutorily and constitutionally required procedures. Plaintiff has proceeded to the third of the four-stage administrative process, yet the hearing and decision that is required within 90 days may not be available for at least another three to five

years due to the serious backlog of agency appeals. Despite its inability to adjudicate the overpayment appeal, Defendant has initiated 100% recoupment of the provider's payments after completion of the second stage of the appeal. Plaintiff's sole source of income is payments received from Medicare, therefore, the improper recoupment of 100% of the provider's Medicare funds will undoubtedly irreparably harm the provider by forcing its closure and its filing of bankruptcy. A successful business once valued over $500,000.00 would be destroyed, ten (10) valuable employees will lose their jobs, and approximately forty (40) patients relying on the provider will have to find home health services elsewhere. Plaintiff seeks two forms of relief to remedy Defendant's *ultra vires* acts. It seeks mandamus *and* injunctive relief for the injuries inflicted upon the provider and to remedy the statutory violations, its rights to procedural Due Process, and those that establish an *ultra vires* cause of action.[1]

2. Plaintiff is entitled to mandamus relief compelling Defendant to properly adjudicate its administrative appeal of a Medicare overpayment. On May 5, 2016, Defendant noticed a $909,176.00 extrapolated Medicare overpayment. Plaintiff is at the third stage of the appeal process and Defendant has been recouping 100% of the provider's Medicare payments since 2017 to collect the alleged extrapolated $909,176.00 overpayment despite failing to render an Administrative Law Judge ("ALJ") hearing within 90 days in accordance with 42 U.S.C. §1395ff(d). Accordingly, Plaintiff seeks an order that precludes Defendant's recoupment of the Medicare overpayment until it adjudicates Plaintiff's third stage appeal.

[1] Recently, in *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496 (5th Cir. 2018), the Fifth Circuit held the trial court had jurisdiction under the collateral-claim exception to the administrative exhaustion requirement over a provider's due process and *ultra vires* claims. The provider brought an action to prevent recoupment until a hearing could be provided in accordance with 42 U.S.C. §1395ff(d). In *dicta*, the Court rejected the government's view that exhaustion of administrative remedies is a prerequisite to mandamus jurisdiction.

3. In addition, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment and refund the improperly recouped funds until it can provide an ALJ hearing in accordance with 42 U.S.C. §1395ff(d). Defendant has initiated recoupment of the provider's Medicare payments to collect the $909,176.00 Medicare overpayment. Yet, Defendant is unable to adjudicate the ALJ hearing within 90 days as required by 42 U.S.C. §1395ff(d). Plaintiff will be unable to obtain an ALJ hearing for at least three to five *years*. The collection and recoupment of the extraordinary amounts at issue, without providing Plaintiff the hearing in accordance with the adjudicatory time frame as required by the applicable statute, violates the provider's Due Process rights. The government's recoupment while a genuine billing dispute remains mired in the growing backlog of hundreds of thousands of claims pending before the HHS Office of Medicare Hearings and Appeals ("OMHA") will irreparably harm Plaintiff by forcing the destruction of its business and the ensuing closure of its operations. Patients relying on the provider will have to find home health services elsewhere. What should not take more than 90 days may take as long as five years. The government's egregious *ultra vires* conduct can only be remedied by a form of injunctive relief otherwise unavailable through the administrative process.

**PARTIES**

4. Plaintiff, Han Ma Eum, Inc., d/b/a Coastal Home Health Care is a home health agency participating in the Medicare program, and located in Houston, Texas.

5. Defendant, Alex M. Azar II, in his official capacity, is the Secretary of the United States Department of Health and Human Services ("HHS"), the governmental department which contains the Centers for Medicare and Medicaid Services ("CMS"), the agency within HHS that is responsible for administration of the Medicare and Medicaid programs. He may be served with

process in accordance with Rule 4 of the Federal Rules of Civil Procedure by serving the U.S. Attorney for the district where the action is brought, serving the Attorney General of the United States in Washington, D.C., by certified mail, and by serving the United States Department of Health and Human Services, by certified mail.

**JURISDICTION**

6. This Court has jurisdiction over this action under 28 U.S.C. §1331 (federal question jurisdiction), 28 U.S.C. §1361 (jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq*.

7. The Court has jurisdiction over the lawsuit pursuant to 42 U.S.C. §§405(g), 1395ii and 1395ff(b), and on the authority of *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000). Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures. Plaintiff has been deprived of the administrative process that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. Section 405 of the statute "would not simply channel review through the agency, but would mean no review at all." *Illinois Council*, 529 U.S. at 17. Therefore, the exhaustion requirement is excepted under *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). This exception was explicitly reaffirmed by *Illinois Council*, 529 U.S. at 19-23. The amount in controversy exceeds the $1,000 jurisdictional limit.

8. The Court also has jurisdiction pursuant to 28 U.S.C. §1331 under the clandestine agency policy exception to the Medicare exhaustion requirement established by *Bowen v. City of*

*New York*, 476 U.S. 467 (1986). Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. The failure to provide a hearing within 90 days is tantamount to a "fixed clandestine policy" that violates 42 U.S.C. §1395ff(d). Plaintiff has been deprived of the administrative process that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action. Thus, the exhaustion requirement is excused under *City of New York.*

9. Finally, the Court has jurisdiction pursuant to 28 U.S.C. 1331 under the entirely collateral Constitutional claim exception to the Medicare exhaustion requirement established by *Mathews v. Eldridge*, 424 U.S. 319 (1976). Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures. Plaintiff has been deprived of the administrative process that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. Such failure violates Plaintiff's constitutional right of Due Process guaranteed by U.S. CONST. amend. V, §1. Moreover, the failure to provide an ALJ hearing within 90 days and the request to suspend recoupment temporarily is not a benefits determination, but an otherwise unreviewable procedural issue. Jurisdiction is based upon Plaintiff's constitutional claim that is collateral to a substantive claim for benefits.

**VENUE**

10. Venue is proper in this Court under 42 U.S.C. §§505(g), 1395ii and 1395ff(b), and 28 U.S.C. §§1391(b) and (e), and 5 U.S.C. §703.

## APPLICABLE MEDICARE LAWS

### The Medicare Program

11. As part of the Social Security Amendments of 1965, Congress established the Medicare program: a national health insurance plan to cover the cost of medical care for the elderly and disabled. *See* 42 U.S.C. §1395 *et seq*. Officially known as "Health Insurance Benefits for the Aged and Disabled," it provides basic protection against the costs of inpatient hospital and other institutional provider care. It also covers the costs of physician and other healthcare practitioner services and items not covered under the basic program. In 1997, beneficiaries were extended the option of choosing a managed care plan. More recently, in 2006, the program was expanded further to include a prescription drug benefit.

### Home Health Services

12. Medicare covers home health services furnished to beneficiaries by home health agencies participating in the program. *See* 42 U.S.C. §1395x(m); 42 C.F.R. §409.40 *et seq*. A provider must act on a physician's certification that the individual is confined to the home, needs skilled nursing care on an intermittent basis or is in need of physical or occupational therapy, or speech-language pathology service, and is under the care of a physician who has established a plan of care. 42 C.F.R. §409.42. If the patient does not need therapy, skilled nursing care must be needed at least once every 60 days. *Id*.

### Payment and Audit Functions

13. Medicare's payment and audit functions are performed by various federal contractors. For instance, the payment of home health claims at issue in this case was made by Palmetto GBA, LLC. Various other contractors, like Health Integrity, LLC, a Zone Program

Integrity Contractor ("ZPIC")[2], investigate instances of suspected fraud, waste, and abuse as well as identify any improper payments that are to be collected by Administrative Contractors.

**Appeal Process**

14. Home health agencies participating in the Medicare program are entitled to appeal the initial action. *See* 42 U.S.C. §1395ff. Federal regulations establish an elaborate administrative appeal process to review the adverse action. *See* 42 C.F.R. Subpart I – Determination, Redeterminations, and Appeals Under Original Medicare. A provider dissatisfied with an initial determination may request a Redetermination by a contractor in accordance with 42 C.F.R. §§405.940-405.958. The Redetermination must be issued within 60 calendar days. If a provider is dissatisfied with a Redetermination decision, it may request a Reconsideration by a Qualified Independent Contractor ("QIC") in accordance with 42 C.F.R. §§405.960-405.986. The Reconsideration must be issued within 60 calendar days. In the event the provider is dissatisfied with the Reconsideration decision, it may request an ALJ hearing in accordance with 42 C.F.R. §§405.1000-405.1054. The ALJ must issue a decision within 90 calendar days. The provider may request review of the ALJ's decision by the Medicare Appeals Counsel in accordance with 42 C.F.R. §§405.1100-405.1140. The Counsel must issue a decision within 90 calendar days. The Counsel's decision is the final agency action, and it is subject to judicial review. See 42 U.S.C. §1395ff; 42 C.F.R. §§405.1130, 405.1132, 405.1134; *see also* 42 U.S.C. §405(g).

[2] Qlarant, a Unified Program Integrity Contractor ("UPIC") has replaced the ZPIC to perform audit, oversight and antifraud, waste and abuse functions.

**Appeal Backlog and Resulting Delays in Adjudication Times**

15. Despite the statutorily-mandated time periods governing the appeals process, in practice it takes a supplier or provider much longer to fully pursue its claim through the Medicare appeals process due to the growing backlog of Medicare appeals.

16. An exponential increase in claim appeals has caused this growing delay in the Medicare appeals process, fueled in large part by the Medicare Fee-For-Service-Recovery Audit Contractor Program ("RAC Program"), a demonstration program that was ultimately instituted and expanded in 2010. Under the RAC Program, aggressive government contractors such as ZPICs, have issued numerous inappropriate claim denials, forcing a disproportionate number of providers into the Medicare appeals system to challenge these denials.

17. Indeed, the number of Medicare appeals filed grew from 35,831 appeals in Fiscal Year ("FY") 2009, the last full fiscal year before the RAC Program's official expansion, to over 594,000 in FY 2017 – an almost twentyfold increase in claims. *American Hospital Assoc. v. Burwell*, 812 F.3d 183 (D.C. App Feb. 9, 2016), at Doc 58-1, Decl. of Jennifer Moughalian, ¶ 7.

18. Based on current data, OMHA predicts that the number of pending administrative appeals will rise to 979,591 – one million – by the end of FY 2021. (Sept. 30, 2021). *Id*. at ¶ 9.

19. Even in the best-case scenario, wherein the FY 2018 President's Budget includes legislative and budget proposals aimed at improving the efficiency of the Medicare appeals process, OMHA still predicts that the number of pending appeals will be over 500,000 through FY 2019, and under the best circumstances, the number of appeals will have only dropped to 375,674 by the end of FY 2021. *Id*. at ¶¶ 12, 13.

20. By OMHA's own admission, the ALJs have simply been unable to keep up with the increasing volume of Medicare appeals. As of OMHA's September 1, 2017 status report,

OMHA has received 167,899 new claims for adjudication in 2017, but has only been able to adjudicate 76,000 of its total 595,000 outstanding claims. *Id*. at Ex. 1. The rate at which the ALJs can adjudicate these appeals is far below the rate at which new appeals are being filed, resulting in a longer and ever-growing backlog.

21. As of February 2014, the average wait time for a provider's case to even be assigned to an ALJ docket was twenty-eight (28) months. *See* OMHA Medicare Appellant Forum Presentation (Feb. 12, 2014), available at https://www.hhs.gov/sites/default/files/omha/OMHA%20Appellant%20Forum/omha_medicare_appellant_forum_present_actions.pdf (last visited October 26, 2017) (hereinafter "OMHA Presentation").

22. Based on the growing number of appeals cited above, the situation is only deteriorating. The predicated wait times to obtain a hearing once a case is assigned to an ALJ means providers who lodge new appeals from the QIC to the ALJ, can realistically expect to wait three to five years – and likely longer – to even obtain an ALJ hearing, much less a decision.

**CONDITIONS PRECEDENT**

23. All conditions precedent have been performed or have occurred.

**FACTS**

**Medicare Home Care Provider**

24. Han Ma Eum, Inc., d/b/a Coastal Home Health Care, is a home health agency participating in the Medicare program, and located in Houston, Texas.

25. In 2016, Plaintiff was a successful business valued over $500,000.00. Plaintiff's sole source of revenue is payments from Medicare, therefore, Plaintiff has been operating at a

loss since the government improperly initiated recoupment in 2017 and is at risk for closure of the business and filing bankruptcy.

**Initial Determination**

26. On May 2, 2016, Health Integrity, LLC, a Zone Program Integrity Contractor ("ZPIC"), determined a $909,176.00 overpayment for claims submitted during the period of July 25, 2013 through July 24, 2015. The ZPIC extrapolated the overpayment using statistical sampling. The actual amount of the overpayment was $57,529.98, which was determined based upon a review of 31 claims submitted by the provider for payment. Of these claims, 30 were denied.

27. On May 5, 2016, Palmetto GBA, LLC, a Medicare Administrative Contractor ("MAC") notified Plaintiff of the $909,176.00 Medicare overpayment. According to the notice, the overpayment was based upon a post-pay investigation conducted by Health Integrity, LLC and reflected the Medicare overpayment determination issued on May 2, 2016. The notice, however, was not accompanied by any of the essential statistical data used to calculate the overpayment, nor did it include critical evidence regarding the audit. This notice informed the provider of its administrative appeal rights.

**Redetermination**

28. On or about May 19, 2016, Plaintiff requested a redetermination of the overpayment determination pursuant to 42 C.F.R. §405.940 *et seq*., that disputed and contested the overpayment determination.

29. Plaintiff argued the ZPIC had not followed the statutory and regulatory guidelines for denying payment on the home health services represented in the 30 claims on appeal, and that the medical records and documentation support the payment of the submitted claims. Further,

Plaintiff asserted that the ZPIC's cursory and limited assessment of the beneficiaries' medical histories and conditions cannot be substituted for the judgment of the physicians and practitioners who performed face-to-face assessments and issued orders for home health services. Finally, Plaintiff contended that the statistical sampling and methodology used to calculate the amount of the alleged overpayment was not conducted pursuant to statutory and regulatory guidelines, and, therefore, does not reflect a proper and accurate overpayment amount. The provider also alleged that the ZPIC did not properly reopen the claims and has not presented good cause to have done so. Nor did it review the claims on a case-by-case basis so as to not jeopardize the beneficiaries in both the sample and the extrapolated universe.

**Decision**

30. On July 28, 2016, the MAC issued a fully unfavorable redetermination decision sustaining the overpayment determination.

**Reconsideration**

31. On or about September 23, 2016, Plaintiff requested a reconsideration of the MAC's decision arguing, among other things, that the ZPIC had failed to adhere to statutory and regulatory guidelines in denying the claims comprising the sample, and that the medical records and documentation support the payment of the submitted claims. Further, Plaintiff asserted that the ZPIC's cursory and limited assessment of the beneficiaries' medical histories and conditions cannot be substituted for the judgment of the physicians and practitioners who performed face-to-face assessments and issued orders for home health services. Finally, Plaintiff contended that the statistical sampling and methodology used to calculate the amount of the alleged overpayment was not conducted pursuant to statutory and regulatory guidelines, and, therefore, does not reflect a proper and accurate overpayment amount. The provider also alleged that the ZPIC did not properly reopen the claims and has not presented good cause to have done so. Nor did it review the claims on

a case-by-case basis so as to not jeopardize the beneficiaries in both the sample and the extrapolated universe.

**Decision**

32. On November 22, 2016, Maximus Federal Services, a Qualified Independent Contractor ("QIC"), issued an unfavorable decision on the overpayment determination.

**ALJ Hearing**

33. Plaintiff filed its request for ALJ Hearing of the QIC's decision on January 19, 2017.

**Improper Recoupment**

34. Based on Defendant's recent reports, the hearing and decision that is required within 90 days may not be available for at least another three to five years due to the serious backlog of agency appeals.

35. Nonetheless, Defendant initiated recoupment to collect the alleged $909,176.00 extrapolated Medicare overpayment in accordance with 42 U.S.C. §1395ddd(f)(2) after issuance of the reconsideration decision.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

36. Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures. Plaintiff has been deprived of the administrative process that effectively prevents the provider from exhausting administrative remedies to challenge the illegal action. No administrative or judicial review is otherwise available to contest Defendant's *ultra vires* actions. Such failure violates 42 U.S.C. §1395ff(d) and Plaintiff's constitutional right of Due Process of Law guaranteed by the U.S. CONST. amend. V, §1. Under these facts, the administrative exhaustion requirement is excused.

## CLAIMS FOR RELIEF

### Count 1 – Violation of Procedural Due Process of Law

37. Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

38. The Fifth and Fourteenth Amendments to the U.S. Constitution guarantee that no person shall be deprived of life, liberty, or property without Due Process of Law.

39. Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

40. Despite its inability to adjudicate the overpayment appeal, Defendant initiated 100% recoupment of the provider's payments after completion of the second stage of the appeal, which will undoubtedly irreparably harm the provider by forcing its closure and its filing of bankruptcy.

41. Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

42. Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

43. Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment and refund the improperly recouped amounts until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

### Count 2 – Violation of the Medicare Act

44. Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

45. Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

46. Despite its inability to adjudicate the overpayment appeal, Defendant initiated 100% recoupment of the provider's payments after completion of the second stage of the appeal, which will undoubtedly irreparably harm the provider by its forcing closure and its filing of bankruptcy.

47. Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

48. Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

49. Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment and refund the improperly recouped amounts until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

**Count 3 – Violation of the Statutory Limitation on Recoupment**

50. Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

51. Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

52. Despite its inability to adjudicate the overpayment appeal, Defendant initiated 100% recoupment of the provider's payments after completion of the second stage of the appeal, which will undoubtedly irreparably harm the provider by its forcing closure and its filing of bankruptcy.

53. Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

54. Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

55. Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment and refund the improperly recouped amounts until it can provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

**Count 4 – Ultra Vires**

56. Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

57. Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

58. Despite its inability to adjudicate the overpayment appeal, Defendant initiated 100% recoupment of the provider's payments after completion of the second stage of the appeal, which will undoubtedly irreparably harm the provider by its forcing closure and its filing of bankruptcy.

59. Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

60. Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

61. Accordingly, Plaintiff is entitled to injunctive relief that requires Defendant to suspend recoupment and refund the improperly recouped amounts until it can provide a hearing a decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

**Count 5 – Mandamus**

62. Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

63. Defendant initiated recoupment to collect the alleged $909,176.0 extrapolated overpayment after issuance of Plaintiff's reconsideration decision. However, Defendant's failure to adjudicate the third stage of Plaintiff's appeal within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

64. Defendant had a duty to adjudicate Plaintiff's third level appeal within 90 days in accordance with 42 U.S.C. §1395ff(d) and Plaintiff's constitutional right of Due Process of Law guaranteed by U.S. CONST. amend. V, §1.

65. The Mandamus Act, 28 U.S.C. §1361, provides that federal district courts shall have jurisdiction over any action in the nature of mandamus, and may compel an officer or employee of the United States or any agency thereof to perform a duty owed to Plaintiff.

66. The administrative process conducted in accordance with 42 U.S.C. §1395ff does not provide a mechanism to compel Defendant's compliance with its duty to adjudicate an ALJ hearing within 90 days.

67. Exhaustion of administrative remedies is not a requirement for mandamus jurisdiction. *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 506 (5th Cir. 2018).

68. Accordingly, Plaintiff has a clear right to mandamus relief, Defendant has a clear duty to act, and no other adequate remedy is available, and this Court should compel Defendant to cease improper recoupment and refund the improperly recouped amounts until it provides an ALJ hearing in accordance with 42 U.S.C. §1395ff(d).

**Count 6 – Declaratory Judgment**

69. Plaintiff hereby incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

70. Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

71. Despite its inability to adjudicate the overpayment appeal, Defendant initiated 100% recoupment of the provider's payments after completion of the second stage of the appeal, which will undoubtedly irreparably harm the provider by its forcing closure and its filing of bankruptcy.

72. Indeed, Defendant's failings have essentially denied to Plaintiff the fundamental requisites of Due Process, notice and an opportunity to be heard.

73. Defendant has effectively deprived Plaintiff of the very administrative process that is required under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived Plaintiff of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

74. Accordingly, Plaintiff seeks a Declaratory Judgment pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57 that declares Defendant has violated Plaintiff's rights under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived of it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

**REQUEST FOR PRELIMINARY INJUNCTION**

75. Plaintiff will suffer irreparable injury if Defendant is not required to temporarily suspend recoupment and refund the improperly recouped amounts until it can provide a hearing decision within 90 days or otherwise follow the statutorily and constitutionally required procedures. Indeed, Defendant has effectively deprived the provider of the very administrative process that is required under 42 U.S.C. §1395ff(b) due to its inability to adjudicate the appeal. *See also* 42 U.S.C. 1395ff(d)(1)(A). Thus, Plaintiff is entitled to injunctive relief that requires Defendant to temporarily suspend recoupment and refund the improperly recouped amounts. Defendant has initiated recoupment to collect the alleged the $909,176.00 extrapolated Medicare overpayment in accordance with 42 U.S.C. §1395ddd(f)(2) after issuance of the reconsideration decision. Prior to the government's action, Plaintiff was a successful business valued over $500,000.00. Plaintiff's sole

source of revenue is payments from Medicare. Accordingly, all will be lost if recoupment continues before the provider gets an ALJ hearing. The government's recoupment while a genuine billing dispute remains mired in the growing backlog of hundreds of thousands of claims pending before OMHA will irreparably harm Plaintiff through the destruction of its business and ultimately force the provider to file bankruptcy. Also, it will cause the Medicare beneficiaries relying on the provider to unexpectedly seek essential home health services elsewhere. The collection and recoupment of the extraordinary amounts at issue without providing Plaintiff notice and a meaningful opportunity to be heard, as required by the applicable statute, violates Plaintiff's Due Process rights. The government's egregious *ultra vires* conduct can only be remedied by a form of injunctive relief otherwise unavailable through the administrative process. Clearly, the combined threats of going out of business and disruption to Medicare patients are sufficient for irreparable harm. *Family Rehabilitation, Inc. v. Azar,* 886 F.3d 496, 506 (5th Cir. 2018).

76. There is no adequate remedy at law because the improper recoupment of the alleged Medicare overpayment will force Plaintiff to close its doors and to file bankruptcy, and in doing so the provider loses any hope of a meaningful resolution of this dispute. In other words, Plaintiff may ultimately prevail in its administrative appeal, but as a practical matter the provider will be forced out of business and required to file bankruptcy because of recoupment long before this matter is adjudicated to finality under the process contemplated by law.

77. There is a substantial likelihood that Plaintiff will prevail on the merits because Defendant's failure to make available an ALJ hearing within 90 days while imposing recoupment violates statutory and constitutionally required procedures.

78. The harm faced by Plaintiff outweighs the harm that would be sustained by Defendant if injunctive relief is not granted. The provider will be forced to closed its doors and file bankruptcy because of Defendant's *ultra vires* acts. Defendant, on the other hand, will only be required to do what it is obligated to do under law.

79. Issuance of a preliminary injunction would not adversely affect the public interest. On the contrary, such relief ensures that Defendant will no longer act *ultra vires* in the calculation and collection of the alleged overpayment.

80. Plaintiff is willing to post a bond in the amount the Court deems appropriate, but it should not be required to do so on the facts of this case because Defendant is otherwise obligated to pay for home health services for Medicare beneficiaries under its care.

81. Plaintiff asks the Court to set its application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction.

**REQUEST FOR PERMANENT INJUNCTION**

82. Plaintiff asks the Court to set its application for injunctive relief for a full trial on the issues in this application and, after the trial, to issue a permanent injunction against Defendant.

**ATTORNEY FEES & COSTS**

83. Plaintiff is entitled to an award of attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. §2412, upon showing the applicant is a “prevailing party;” a showing that the applicant is “eligible to receive an award; and a statement of “the amount sought, including an itemized statement from any attorney . . . stating the actual time expended and the rate” charged. The prevailing party is entitled to such attorney fees unless the government’s position was “substantially justified” or special circumstances make an award unjust.

**PRAYER**

84. For these reasons, Plaintiff asks for judgment against Defendant for the following:

a. Issuance of a writ of mandamus that compels Defendant to perform its nondiscretionary duty in accordance with 42 U.S.C. §1395ff(d) to provide Plaintiff with an ALJ hearing.

b. Issue mandatory injunctive relief that requires Defendant to suspend recoupment and return the improperly recouped funds to Plaintiff until it can

provide a hearing and decision within 90 days or otherwise can follow the statutorily and constitutionally required procedures.

c. Issue declaratory judgment declaring that Defendant has violated Plaintiff's rights under 42 U.S.C. §1395ff(b), violated its Due Process rights, and it also has deprived of it of the statutory protections against premature recoupment under 42 U.S.C. §1395ddd(f)(2).

d. Reasonable attorney fees.

e. Court costs.

f. All other relief the Court deems appropriate.

Respectfully submitted,

KENNEDY
Attorneys and Counselors at Law

/s/ Mark S. Kennedy
MARK S. KENNEDY
State Bar of Texas No. 24000122
Southern District Bar No. 435115
LURESE TERRELL
State Bar of Texas No. 24008139
Southern District of Texas 33360
JOANNA A. MARTIN
State Bar of Texas No. 24072153
Southern District Bar No. 1287331
C. TREY SCOTT
State Bar of Texas No. 24083821
Southern District Bar No. 3097879
12222 Merit Drive, Suite 17500
Dallas, TX 75251
Telephone: (214) 445-0740
Fax: (972) 661-9320
markskennedylaw@msn.com

**ATTORNEYS FOR PLAINTIFF**